The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Please be seated. Ready to hear argument in our first case, 22-4187, United States v. Colon. Is it Englert? Good morning. May it please the Court. I'm Cecilia Englert and I represent, I'm counsel to Jose Cruz Colon. I'll be arguing the jury selection issue and I'd like to reserve two minutes for rebuttal. The Sixth Amendment guarantees criminal defendants the right to a jury drawn from a fair cross-section of the community. To make out a prima facie violation, the defendant must show that there's a distinctive group in the community, that representation of that group in the jury panel is not fair and reasonable, and the under-representation results from a systematic exclusion. Most cases raising a fair cross-section requirement, or a violation, are centered around the use of voter registration lists. Courts recognize that no system's perfect and are willing to accept some discrepancies. This Court, in Cecil, upheld the use of voter registration lists. Counsel, before you get into the distinctive group issue, don't we have a threshold question of whether the Sixth Amendment cross-section provision even applies to petite juries? Lockhart seems to say they don't pretty clearly. Holland v. Illinois seems to affirm that. How do you get past those on a threshold basis before we even look at the three-part test? So the Pelham's argument is not that... Their argument is that they were not allowed to even select an unvaccinated juror to be on the panel, and that is systematic exclusion from the jury panel, from the veniree. And so this is different from the case in Holland. It's different from looking at your petty jury and saying, well, no member of this community is on that jury. What happened was that the district court would not allow any of the unvaccinated people to be selected at all. But, I mean, we have similar cases where jurors are on the veniree. They make it to the pool that's being considered, and then a judge strikes them instead of either party. And we have case law that addresses that. But that's not a fair cross-section problem. That's, you know, did the judge abuse his discretion in striking a juror on his own? So when the judge is looking at the entire panel of jurors and then begins to ask questions and strikes as a result of different reasons, different reasons for that person not serving, that is different from a blanket exclusion of unvaccinated jurors. And it has come to the point in the same district court where instead of this process that we had here, the judge has, Judge Novak has asked the clerk to simply strike or not send forward the unvaccinated jurors. So this is a blanket exclusion from the veniree. Well, that's not, that may be, maybe that, what has happened since then might change things a little bit. Here, the unvaccinated jurors aren't excluded from the pool of jurors. They come, they're asked, and they're part of the group. This is a question, so if I have it wrong, please correct me. But they're asked in the questionnaire whether they're vaccinated. And then the list of jurors is put together. And then there is strikes, some by the court and some by the parties. So they're not excluded from the full veneer. They're excluded once the group or the pool is established, it seems to me. Is that not right? Again, because they were struck entirely based on vaccination status. Right, but from a factual standpoint, is Judge Quattlebaum's question answered yes or no? Whether this is really a petty jury question versus... No, I thought the question was the composition of the jury pool. And then it goes through the court process to get down to the petty jury. Weren't all these people included in the initial pool? Well, I think that it's... Well, either they were or they weren't. I don't know that it requires an explanation. They were in that pool in this case. But it would be like bringing in the jury panel and saying, well, all women, you can leave now. And then we're going to compose our... Well, am I right that you or whoever is trying this case disclaimed the Batson claim? That's correct. It is a fair cross-section claim. So, going a little farther down the line, my recollection is almost all of these cases where there's relief granted involves some class where there's an immutable characteristic. There's nothing they can change about it. But that doesn't seem to be the case here. There... Well, I would go back to the Supreme Court's case in Thiel, which was an exclusion of all daily wage laborers. And the court rejected that exclusion and said that the blanket exclusion of any one group damages the jury trial as an institution. I would like to emphasize that intentional discrimination, intentional exclusion is different from a case where there's a challenge based on a disparity drawn from the voter registration list. Counsel, without... Just one more question on this kind of threshold issue and how we look at it. I think I understand your point. And we... Assume hypothetically that at least under the record here, we, Lockhart and Holland, wouldn't compel a finding that the Sixth Amendment cross-section provision doesn't apply here. Would the only way to challenge what happened after that be an abuse of discretion trial management type argument? Well, I think that that would be ignoring the fair cross-section issue and the fact that these people were not allowed to even be considered for the jury, for the petty jury. I would go back to the Supreme Court's admonition that when a blanket exclusion is applied, that a distinct quality is lost in the petty jury. And here we would argue that a prima facie case was made, that just by excluding these people, the district court made a distinctive group. And because it was a direct exclusion, that the rest of the DERN factors are met, that there were no unvaccinated people on this jury panel. And it was because of a systematic exclusion by the district court. Although the district court was trying to prevent the spread of COVID, its questions were not tailored, were not narrowly tailored to preventing the spread of COVID. The district court did not ask the vaccinated, if they lived with any unvaccinated individuals who could have prevented a larger risk. The court did not ask any of the unvaccinated individuals if they might have had a recent or recovered from a recent infection and had natural immunity, or if those people had recently tested negative for the virus. I would also request that the court consider the damage to the institution of the jury trial by excluding a significant portion of the community from serving. All right, thank you very much, counsel. You've got some rebuttal time. Mr. Groeney, did I pronounce that correctly? Precisely, Judge, thank you very much. May it please the court. My name is Fernando Groeney. I actually was the one who raised that issue at trial. I represent the... Raised which issue? The issue that Ms. Engler just argued. And I actually have the other issue, but if I may, I understand. I haven't been in this court in a little while, but I understand that facts are important. The law, you and your law clerks are very familiar with. The facts are sometimes important and actually determine what law is applied to it. So what I would say with regards to the issue that Ms. Engler was discussing with your honors is that if you look at the record, if you look at Joint Appendix 58, 61, and 63, the trial court actually, the defendant, Mr. Cruz Colon and his wife, Ms. Lopez Alvarado, my client, were actually out on bond. So prior to trial, the judge inquired as to what was the vaccination status of the defendant. We informed the court that they were unvaccinated due to deeply held religious beliefs. So we needed to brief the issue. Joint Appendix 58 deals with that. In Joint Appendix 58, we actually... Co-counsel and I, I wrote to the court that due to the beliefs of our clients, they refused to be vaccinated. However, they will comply. And that's the other issue. Chief Judge Davis had actually issued a slew of orders, standing orders, that managed the COVID crisis or attempted to manage the COVID crisis during the pandemic period in the Eastern District of Virginia. Those orders are actually... Reference to those orders are included on the record in the position that I issued to the court. For instance, Chief Justice Davis said lawyers, their staff, people who work at the courthouse either should get vaccinated or wear a mask or take a test within a certain period of time and prove that those tests were negative. That's exactly what happened with our clients. However, when it came down to selecting the jury, we, the defense, the prosecution and the judge mutually agreed to exclude, I think, five prospective jurors from the veneer who were unvaccinated for cause, for other reasons. However, there was one that we did not exclude for cause. But the judge did. And the only cause was that that individual was unvaccinated. When it came down to jury selection that day to the voir dire, apparently undetected, there was another juror, a prospective juror, who was unvaccinated. That juror was actually excluded by the judge for cause, and the only cause was that he or she, I don't remember, was unvaccinated. So I understand that the standard is whether a fair cross-section of the community is excluded improperly. But what we argue here, I think what Ms. Engler is arguing, and the record bears, is that it's the sole fact of being unvaccinated grounds for exclusion for cause. We submit that it is because, as Chief Judge Davis issued in many of those orders, which are cited here, even for the defendants, there were other measures that could have been taken in order to prevent, to effectively manage the court's docket and ensure the safety of all those participants. The marshals, the courts, the jurors, the lawyers, and the defendants. As to my issue, I understand that I have a heavy burden. The jury has ruled, the judge has denied my motion to set aside. Perhaps I should have argued at trial, I should have gone for all the marbles, and I'm confessing that. I shouldn't have gone for all the marbles, guilt or innocence. I should have said, yes, my client has been proven guilty, but she has been proven guilty of a five-year sentence, not a ten-year sentence. She has been proven guilty of selling or conspiring to sell between 500 grams of cocaine, not crack, but powder cocaine, and five kilograms of cocaine. I went for all the marbles and lost. Realizing later that the evidence presented by the prosecution at trial, not in the PSR like the government originally argued in their reply brief or response brief, but not in the PSR but at trial was that the government's main witness only can certainly put two and a half kilograms of cocaine as being reasonably foreseeable to my client. And that falls way short of the 5,000 kilograms or I'm sorry, the 5,000 grams that the law requires in order to impose a I actually believe the court was correct in granting the Rule 29 on its own about striking the heroin component, which was charged in the indictment against my client. But I contend respectfully that the government has failed to prove, or in this case, based upon the evidence admitted, not what's in the PSR, but the evidence admitted, the government failed to prove 500 or 500 or 5,000 grams against my client. Thank you so much. All right. Thank you very much. Mr. Cook? May it please the court. I'd like to start with Judge Quattlebaum's question. The Supreme Court in Holland said that we have never invoked the fair cross-section principle to invalidate the use of either forecaused or in light of Holland, there isn't a fair cross-section challenge to even forecaused bases for striking a prospective juror after the veneer has been assembled. And overwhelmingly what happened here can be characterized as forecaused strikes after the veneer was drawn using voter registration lists, which under Cecil are valid. Now, I would say, although I certainly don't want to be taking up the defendant's argument, two points on that. One is that the way jury selection happened here was unusual because of the pandemic. Now, in the normal course of things, the clerk's office uses the voter registration list. Your argument would say that if you want to make a fair cross-section claim, that has to be with the initial step of the process where the court is assembling the pool before there's any type of examination of the pool. That's right, and I think that helps explain why fair cross-section challenges are pretty scarce. There's not a large body of case law in this circuit about it because what's happened is courts comply with the Jury Selection and Service Act, which says use voter registration, and then Cecil upheld that, and so there really aren't problems arising at the stage of assembling a veneer because the process is just chugging along in accordance with the Jury Selection and Service Act and using a criterion that has been upheld. And then the narrowing of the jury is occurring at the stage of poor cause and peremptory challenges, which takes you outside the scope of the fair cross-section standard. And in light of that, I think that's why you just don't see a whole lot of fair cross-section challenges because in Holland, the Supreme Court said these later in the process bases for removing prospective jurors are not part of the fair cross-section analysis. Now, having said that, there are features that are unusual, I think, about this process, which is usually what you would see is the veneer assembled, people called in for jury selection, and then the judge would go through poor cause and peremptory strikes. Here, in order to eliminate having a very large group of people in the court house at the same time, there were questionnaires sent out in advance, and then there was some screening of the jurors before they even arrived at the court. So there is a way in which, in fairness to the defendant, the lines here are a little bit blurred for practical reasons to limit the spread of the virus simply to avoid having people all in the same room, a large number at the same time. So you can look at this and say... But isn't the difference between being excluded from a petty jury and being excluded from the jury veneer? If you're excluded from the veneer, you're excluded from all jury service. You can't serve on any jury. But if you're excluded from a petty jury, you can come back, or you might be on another jury. Is that a line that helps us distinguish what happened here? I think that's an excellent point, Your Honor. What courts that have used this vaccination status as a basis to exclude people have said, not all the cases, but some of them, is, look, we're not saying that you'll never serve on a jury. We're saying, right now, for this trial, where things are in the pandemic, we're not having unvaccinated jurors. We've constructed this rule that will forever exclude you from the veneer. And so that, I think, does help move this from the realm of a veneer-type challenge, or cross-section challenge, into an ordinary run-of-the-mill type before-cause strike, much like somebody says, I have, in this particular case, I know one of the lawyers, I know a witness, that kind of thing. That basis for exclusion of a juror does not mean that juror will never serve on a jury ever in that district. And so, whereas you look at cases like Taylor and Duren from the Supreme Court, those dealt with rules about women as prospective jurors that applied, in all cases, forever, for as long as that rule existed in that state. For example, one of the rules was that all women had to, in order to serve on a jury, submit a declaration saying that they wanted to be considered for jury service. And that's just a rule that would always apply, and the Supreme Court struck it down. So, I think Your Honor is right, that whether you're talking about a rule that is a categorical rule that's going to affect all trials is an important consideration, in addition to timing considerations, as well as what is the court doing to generate the veneer panel. And in this case, of course, voter registration lists were used. There was a veneer that was drawn, and then they used the question there to start narrowing things down. And some of that happened outside of the courtroom with the agreement of the parties, and some of it occurred inside the courtroom. If the court gets past the question of is this even a challenge to the jury, it's helpful to look at there's a collection of circuit cases out there that have used these three factors that I noted in this 28-J letter from the Tenth Circuit Green opinion that ask whether the group is defined by a limiting quality, whether there's a similarity in attitude, and whether they have a community of interest. I don't think those can be viewed as necessary and sufficient conditions for whether you have distinctive group because, as the Seventh Circuit pointed out, they're rather poor fit for explaining why some equal protection type classes are deemed groups. I also think that that language would have to be read together with a passage in Lockhart that said we've never attempted to precisely define the term today, but we think that the concept of distinctiveness must be linked to the purposes of the fair cross-section requirement. They identified three purposes, which were guarding against the exercise of arbitrary power and ensuring common sense judgment of the community, preserving public confidence in the fairness of the criminal justice system, and implementing our belief that sharing in the administration of justice is a phase of civic responsibility. Lockhart then went on to apply those and say that when you look at those factors, you can understand how groups like women, for example, would be deemed a distinctive group. Those are obviously fairly open-ended factors as well, and so the distinctive group test is one that is flexible, clearly, and has been relatively narrow in its application. The defendant has an argument that is, look, under Cecil, any intentional exclusion of a group would be a distinctive group. That cannot be right because we know from the Supreme Court's cases that they found that there isn't a problem with, for example, excluding from jurors in a capital case those who could not apply the death penalty in the case, and that is a defined group who is expressly excluded for that reason, and that's not a distinctive group for purposes of the fair cross-section analysis. Similarly, you can say the same about the voter registration list, which is non-voters have been intentionally or knowingly excluded, and that is not a distinctive group. With the opposition to death penalty, you wouldn't get that until after you'd already assembled the initial list from, if you're using voter registration, you would have assembled the initial list before you could get to the point of making that determination. I believe that in the cases where they gave rise to the challenge to death-eligible juries, that there was a filtering process occurring at the stage of the veneer, but in federal court, typically, that would not be happening. In federal court, you would be assembling a veneer with the voter registration list and then doing examination of jurors during the jury selection process that would individually take them out. But the principle that the Supreme Court noted in Holland, I think there's a passage there that directly speaks to this rule that would say, anytime you have deliberately drawn up a group and excluded it, even at the veneer stage, it's a cross-section distinctive group. That can't be right in light of what Holland says. Holland says that it does not violate the fair cross-section requirement to, quote, disqualify a group for a reason that is related to the ability of members of the particular case. And I think that goes to Judge Rushing's point, but I also think it fits very nicely with what's going on with the exclusion of vaccinated jurors, even if you were assuming it was taking place at the veneer stage of drawing up a veneer panel. Because the point the courts are making in excluding an unvaccinated juror is that it does affect the ability of members of the group to serve as jurors in a particular case. And when courts have looked at, for example, the criteria in the Jury Selection and Service Act, which again is a provision dealing with the selection of the composition of the veneer. There's 1866c2, which covers exclusions of jurors who would disrupt the proceedings. And the courts have said, look, if you get sick and you infect other members of the jury, we may have a mistrial. And then they also say that under 1866c5, the integrity of the deliberations could be affected, which would be a valid basis. I do think that although the Jury Selection and Service Act is aimed at the composition of the veneer panel, that a basis that Congress has put forth as a criteria in the selection of the veneer panel, if you use that and it's appropriate there, it's also appropriate in the context of a court-caused strike. And so I think that those are informative. What else you got for us, Mr. Cook? If the Court doesn't have any other questions, I'm happy to rest on the briefs. All right. Thank you very much. Ms. Engler, you've got a rebuttal time reserved. Thank you, Your Honor. I'd like to get back to what the Court seems to be interested in, which is whether this was limiting the veneer or the petty jury. And I would urge the Court to think about whether this reasoning would be a way to get around entirely of the fair cross-section requirement. If you can at the stage where you have the jury panel and you're at the point of selecting the petty jury, that you can then, assuming a distinctive group, then eliminate that whole group at that point. We would review that under an abusive discretion standard, right? If the judge said, I'm going to strike all the women for cause because I don't think women should sit on this case, we would review that for an abusive discretion, right? Well, so for striking at the point where the Court is trying to determine whether individual jurors may serve, that is an abusive discretion standard. But in this case, that pretrial conference was... I'm not trying to necessarily dispute where the line is drawn here. I'm just pointing out it's not as though we have to accept your characterization of what stage we're at to make sure that this is being reviewed, right? Even if it were at the petty jury stage, we would still review that and it would seem to me to be an abusive discretion if the judge said, this is just not a case for women. I think though that you could argue it's an abusive discretion standard, but I think that if you have a Sixth Amendment fair cross-section claim, that it can also be brought under a constitutional violation standard. May I just very quickly address that if we get to the distinctive group, that it does not necessarily have to be an immutable characteristic. United States v. Reskiewicz addressed Reservation Indians, and although it did not it said it was a close call. There is a line in there saying that it need not be an immutable characteristic. In closing, striking all unvaccinated jurors cause irreparable harm to the defendants and to confidence in the criminal justice system. They request that this court reverse their convictions and remand for a new trial. Thank you, Judge. May it please the court, I would just say three quick points. As to the Benaia question, once the questionnaires are sent, whoever is not excluded and the record shows both sides' exclusions whoever is not excluded is in the Benaia. Then there were at least two additional exclusions for other reasons actually for the only reason that these individuals were not vaccinated. As to Judge Rushing's question, would that be an abuse of discretion? Yes, it would be an abuse of discretion I humbly say, and if we look and actually Chief Judge Davis's general orders, which were not mandatory they were, you know, in his opinion with the research and they're posted on the website of the Eastern District of Virginia. All of those general orders indicate that unvaccinated individuals are not permitted access to the criminal justice system in any capacity including as jurors. In fact, he says that depending on the vaccination status of the individual, masks may be removed or not according to the discretion of the judge in grand juries during jury voir dire and during jury selection or trials. So that applies to lawyers and to everybody. It applies to our defendants, our clients. It applies to prospective jurors. So Chief Justice or Chief Judge Davis in his general guidance did not prohibit unvaccinated jurors from actually serving and whether they were prohibited by this particular judge or not, maybe that's a standard that should be reviewed for abuse of discretion. Thank you for your consideration. Thank you, counsel. We appreciate the arguments from all the counsel in this case and we note that both counsel or the appellants are court appointed and the court wants to express its appreciation for your undertaking representation in this case because we could not perform our duties unless there were members of the bar like you who were willing to undertake that task. So as you may know, our tradition here is to come down to the well of court and shake your hands after the argument but we're still COVID limited so we hope the next time you're here we can do that. So with that, we'll move on to our next case.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., Allison J. Rushing